And good morning, one and all. Nice to see you all. Hope everyone's well. And Mr. Zausman is going to get to do something he doesn't usually get to do. He gets to go first today. Thank you, Your Honor. How much time are you reserving? You don't get to reserve time. Thank you for reminding me, Your Honor. I'll reserve three minutes for rebuttal. Three minutes. Very well. Go ahead, sir. On these rare occasions when I have this opportunity, I look for the appellant's table to make sure I was in the right place. Thank you and good morning, Your Honors. For the record, Robert Zausman on behalf of the government. Your Honors, as you're well aware, the Mandatory Victims Restitution Act requires that a district court make victims whole to the extent possible. And we are here today to appeal one part of the judgment of the district court, which in our view substantially varied from that goal. The result of which will be that one of the victims in this case, Citizens Alliance for Better Neighborhoods, a nonprofit group, with certainty will not recover well more than half a million dollars of the amount that Mr. Fumo took from it by fraud. What is your response to Fumo's contention that there's no grammatical way of reading the sentence which is consistent with your interpretation of what the court did? Well, what this court did was it said two things. And there is, you could say, an ambiguity and inconsistency. Well, not what the court did, but the mandate. The mandate was we affirm Fumo's conviction, vacate the sentences of Fumo and Arnao, and remand for further proceedings. The mandate vacating the sentence vacates the entire sentence. That's the law from the Supreme Court in Pepper. It's the law of this court. This court has often said the restitution is part of the criminal sentence. Most prominently in the en banc decision in United States v. Leahy in 2006. So the mandate was vacating the sentence, and that's how we read it at the time. Could you reasonably conclude that you waived the restitution increase? No, Your Honor. We in our brief repeatedly over the course of 200 pages linked the loss to the restitution and said that the court's mistakes in the loss, which this court found, also required reconsideration of restitution. There is no basis, I would say, Your Honor, on which it could be said that the government waived its position when it was said over and over again throughout the briefing in that case. What was also said over and over again throughout this case, Your Honor, is that loss and restitution were inextricably linked. This was a case in which the government engaged in quite an extensive, somewhat extraordinary effort to list to the penny what was taken from Citizens Alliance and from the other victims. Fumo's position is that you're confusing level of contribution to the victim's loss with gain or loot. You're confusing it. And we don't think we are. Now, this is moving away from his waiver argument, Your Honor. It's a separate argument. It's the same theme, though. Well, sure. Well, in this case, loss and restitution are the same, and no party ever disputed that. In fact, at the resentencing proceeding, once we got past the defendant's argument that we had somehow waived this on appeal, there was no dispute at all regarding restitution, regarding the number. Even if you get down to the nitty-gritty of it, though, we're still left here, this court with a highly deferential standard of what this court whacks up as contribution here. Absolutely, Your Honor. And that's why this is such a rare appeal. There is an abuse of discretion standard. But what we have here is the district court had to make a judgment on two factors, contribution to the loss and the economic circumstances of the defendant. And in this case, there is no evidence, none, supporting the district court's result regarding either. And that's why we're here in the unfortunate. Well, that's not so. The record is clear that ‑‑ I forget exactly where it is. That I think even you admitted, even the government admitted, that this couldn't have come forward without her being involved in the looting. I don't believe we ever said it couldn't have happened, Your Honor. That she was a key, or I forget now exactly, but she was essential or something like that. Well, she played an important role. That's why she was prosecuted. But he could have easily committed the same crime by having someone else do it or write the checks himself. What she did was she wrote the checks, she carried out his orders. What was essential to this, this crime never happens. If Mr. Fumo doesn't concede it, direct it, profit from it, she is the person who carries it out and she's rightly prosecuted for that. But we never, ever have said, nor did anybody else in the case say, that she was essential or what the district court found was that she was, quote, equally culpable. No one agreed with that. Not Fumo, not Arnao, not the government, ever. And it's not supporting the evidence, as we explain at length in our brief. You even gave up on her appeal, on her case. We did. In this matter, there's nothing to be gained by it. What we could appeal here would be to get a double the uncollectible judgment we already have. There was no reason to pursue that. What you could get was what, sir? Excuse me, sir? I didn't understand that. What you could get was what?  No, severally, right. Separately from him. We didn't appeal to make her responsible jointly and severally for the whole thing. Because we're not going to collect half. And so we're not burdening the court with that part of the appeal. We're here to say that Mr. Fumo is the one who took all the money, received all the money, directed the fraud. Does that have some input into our decision-making here, that that appeal was discontinued? I don't think so, Your Honor. It was our judgment that there's nothing to collect there, given what we know are the economic circumstances. She is now being paid, without dispute by any party, she is paying $1,000 a month. At that rate, to pay the half she was ordered to pay would take 65 years. There's no reason for us to come to this court and say, let's make it 130 years, which is what we would be doing. But does it have any bearing on Mr. Fumo's responsibility? No. The district court abused its discretion in letting him off from repaying to the victim half of what he personally took and he put in his pocket. We've explained that over 96% of the $1.5 million that was taken from Citizens Alliance, we traced directly to him, not just by a preponderance of the evidence, but without dispute. And he is being allowed not to repay three quarters of a million dollars that he took from this victim. That's unprecedented in the law of this court, in my experience, I think in anyone else's experience. That's what we're here to appeal. And the other important point, looking at the economic circumstances of the defendants, is that if this is done properly, as it almost always is, if he's ordered to pay the money he personally took, we could collect that faster than I could walk out of this court. This is someone who has all of this money. This is not Ms. Arnao where we have to wait 65 years. That's why it's an abuse of discretion. Can you address the waiver issue? The waiver, well, I'm not clear where the defense stands on that right now. I think they argued waiver in their brief and then sort of backed off on that in the reply brief. As I understand the argument right now, the argument is that the government, in its first appeal, did not argue restitution. We may have said it in our brief, we may have asked for it in our prayer for relief, but it wasn't argued. It wasn't explained. That's wrong for reasons I'll explain. But then the argument goes further than that, and I think it's quite remarkable, in saying that this court essentially made that decision, that the government had not argued the restitution without saying it, and that this court sub silentio decided that it wouldn't address restitution, I guess because the government wrote a poor brief, and wouldn't say anything about it, and would let Mr. Fumo walk off with $2 million that he took, not just from Citizens Alliance, but from the Senate and from the Independent Seaport Museum as well. That would be a stunning mandate for this court, without explanation, to let somebody not repay half of what they took. Now, did we argue it in our appeal? Absolutely. You can look at the government's brief as well as we can, page after page. We linked loss to restitution. We explained for over 50 pages what was wrong with the precise loss calculation. This court agreed with us on every aspect of it. I want to get this straight. You want two points on the appeal. You want Mr. Fumo to be liable for all of the restitution, whatever it is, and you think the restitution amount is too low. No, Your Honor, not exactly, if I may. The court found the correct amount of restitution, which totals $4.2 million. Right. The original judgment, which we appealed, was $2.3 million, and so the court added $1.9 million based on this court's finding. Now, the cross appeal here is Okay, so you would be satisfied if he was liable for the whole works? Correct, because Because you already got the remedy as to the amount. That's correct. And the interesting thing is, Your Honor, there's no dispute about the amount. The only argument being made in the cross appeal is that it should have stayed at $2.3 million because we didn't properly argue it in our brief. Well, I'm confused. Now, is it your position, I heard Judge Greenberg's question, that we should order joint and several liability so that you could collect the whole thing from either one of them, or that we should order Fumo to pay 96%, I think was the figure, that he raked off and she took the 4%, something like that? Our position is that Mr. Fumo should be ordered to pay joint and several, all of the restitution, all 100%, including the 3% that Ms. Arnao got, because he's the one who dictated that as well. Well, you want him responsible for all of the loss. We want him responsible for all of the loss, jointly and several, and it would be jointly and several with Ms. Arnao as to the first half, because neither us nor Ms. Arnao has appealed that aspect of the judgment. If we order the district court, you want a direction to the district court that we should do that? Well, that's ideal. It doesn't have to go that far. This court could explain the error that the district court made on the only two factors, based on the evidence, and ask the court to redo it. Should we tell the court that it should be joint and several or 96% or what? Ideally, joint and several, Your Honor. In any case in which... You know, the district court sentencing, this is something highly deferential. Matter of fact, I got reversed some time ago by reversing a district court sentence, and it's not easy to step on a district judge's toes when he exercises that discretion in sentencing or whacking up the payments here. So what should the mandate from this court be if you had your ideal win? My ideal mandate, Your Honor, is that while there is an abusive discretion standard, what we're dealing with here are two factual judgments regarding the contribution of each defendant to the loss and the economic circumstances of each defendant. That's what the statute directs the court to look at. And both of the factual findings by the district court are clearly erroneous because they are based on no evidence... And what should we want the district court to do? And so the district court should therefore be ordered to either reconsider and reach an appropriate decision based on the evidence, or given the fact that the evidence is so overwhelming and plain here, I believe this court can direct an entry of an order of joint and several liability and say this litigation has gone on long enough and this is... Short of being an ideal mandate. That's the ideal mandate. Short of being an ideal mandate. We would be satisfied with a direction to reconsider, but noting, of course, necessarily the fact that the decision that was made is clearly erroneous. As of now, she's only liable for half of the restitution? Right. And you didn't appeal from that? Correct. Now, analytically then, you know, in a technical sense, how could they be jointly and severally liable for the whole amount if she's not liable for half of the amount? Well, they can't. Analytically, I mean... They can't. The judgment that we favor is that Mr. Fumo must be held responsible for all of the restitution balance, and it would be joint and several as to the first half owed to Citizens Alliance given the fact that that was the judgment that was not appealed by either side. But fundamentally, what we're here to say is that Mr. Fumo ran this scheme. He initiated it, he directed it, it wouldn't have happened without him, and he put it all in his pocket. You're looking at the big picture. You're looking at the big picture as you pose it. Yes, Your Honor, and the big picture, again, is that the way all of this needs to be interpreted and analyzed is based on the fundamental purpose of the Mandatory Victims Restitution Act. That's what this Court has always said. The purpose of the Act is to make victims whole. It's not to let a criminal walk away with $2 million that he took. And when you look at this decision in light of the purpose of the Act, which this Court says you have to look at, you can't justify having Mr. Fumo not pay what's owed. If the judgment stays the way it is, mark my words, with all respect, Citizens Alliance will not receive back what Mr. Fumo took, what he put in his pocket, and what he still has, and can pay back today. And that's the reason we're here. Well, yeah, it would be impossible based on Arneo's economic circumstances. Exactly. It will never be collected if the judgment stays the way it is, and that cannot be reconciled with the Mandatory Victims Restitution Act. Again, it's worth pointing out, I know I'm over my time, but if I could say one thing, this is not a remedy that was asked for by anyone. This was something that the District Court announced on its own at the end of a very long sentencing proceeding regarding Mr. Fumo. The original judgment of the District Court at the first sentencing was joint and several liability, as it has been in every other fraud case that I've ever been involved with in which you have joint feasors. This was a surprise. We don't know the basis for it, but we do know that there's no evidentiary support for it whatsoever. I don't have any further questions. Okay. Thank you very much. Mr. Goldberger? May it please the Court, my name is Peter Goldberger. It's my privilege to represent the Appellee Cross Appellant, Vincent Fumo, who was the defendant below. I would like to ask if the Court would permit to reserve a minute for rebuttal on our cross appeal, and limited to the cross appeal. Go ahead. Well, that would be one minute. Thank you, sir. On the government's appeal, which is the apportionment of the restitution, it's very clear that Judge Puckwalter did not abuse his discretion under this Court's view. Well, why don't you answer Mr. Salzman's point that there is such a disparity between the actions, the focus of the criminal activity between Ms. Arnao on the one hand and Mr. Fumo on the other. He's used the 96% number. First, do you dispute the 96%? And then generally, do you dispute the notion that he is much more culpable? I don't dispute the 96% number, you know, give or take minor amounts. Right, we could go 94. Exactly. In no way that would affect this argument. Yes. The point is that the statute offers the judge, whenever there are multiple defendants who may be partially responsible for the same loss, to have an even greater and more complicated set of discretionary decisions to make at a sentencing than the judge already has. As long as the judge orders 100% restitution, which he did, the judge then has discretion to apportion that restitution amount between responsible co-defendants. Based on what? Hasn't he abused his discretion? No. By one of the factors you must keep in mind is the victim being reimbursed. And according to this record, there's no way, as you heard, for the reimbursement to go forward when she doesn't have the money to pay and she's paying $1,000, whatever it is. It's never going to happen. It's not going to happen if they choose for it not to happen. The collection is on the government. She is in a wealthy situation with a husband. I don't know the form of the ownership of all their property. We don't know whether there have been fraudulent transfers. She profited a great deal. Mr. Gilbert, the court disagreed with you. They gave a figure for her to make restitution, which has never been appealed, and that is the figure that the court deemed that she was capable of making. Yes, exactly. So we have a situation here where if we don't change that, the victim is not going to be reimbursed. Oh, no. To the contrary. Judge Buckwalter found that she had this. This is page 201 in Volume 2 of the appendix. The finding that they have to find, the show is clearly erroneous, is Judge Buckwalter's finding she has the ability to pay and should. Well, no. She has the ability to pay doesn't mean that's the response to Judge Talents. She has the ability to pay the amount that he ordered her to pay, about $750,000. Which will take the rest of her life and your life and my life. There's a statute that says that to the extent of her ability to pay, she'll pay while she's on supervised release, and then there's a judgment. That's not the error. The way this comes before this court, that victim is never going to be reimbursed. I don't accept that. As the record now stands. Actually, what will happen is. Answer my question. How can we let this stand when, as the record now appears, the victim is never going to be reimbursed unless we make this joint and several or 96%, 4%? That is not what the record shows, and the Judge Buckwalter's finding to the contrary is not clearly erroneous. She can satisfy this by making payments. How much is it? $1,000? Probation has asked her to pay $1,000 a month. I'm not agreeing that that's all she can pay. She's going to have to live a very long time. If that is the most that she could pay. But I don't know that. And the point is that's her judgment, and the government didn't appeal it and she didn't appeal it. And this is the key thing. Judge Buckwalter had before him a complex sentencing decision on two defendants. What the government seeks to do here is to overturn the judge's decision on her sentence. The judge will negate. Let me ask you this question then. I believe earlier in our discourse you agreed that with regard to the government's point on contribution to loss, that you would concede that Mr. Fumo contributed to the loss vis-a-vis his criminal participation. Now, I presume that as to Mr. Zalzman's second point. Excuse me? I've been interrupted. I shouldn't have. I presume with regard to Mr. Zalzman's second point, with regard to the economic circumstances of each defendant, he's taken the position obviously that this is all we're going to get, and you've obviously been in the middle of a colloquy with my colleagues on that point. So if you concede that there was error with regard to contribution of loss. Oh, no. I don't concede that. Well, if he's clearly more liable or criminally liable or responsible or whatever term you want to use, right, with the criminal activity involved, how could you not concede that point? Because it doesn't have to be measured in dollars. This is part of the discretion. It can be measured in the essential action and responsibility of the co-defendant. Each plays his or her role. So you disagree with Mr. Zalzman's characterization with regard to who is the initiator, who's the main player, so to speak, and so forth? No. Not who's the initiator or main player either. You're saying that. Your client was the dominant person behind this fraud. Of course no one would disagree with that. The question is whether her responsibility is sufficiently large and important that the judge could weigh that culpability that she had and her ability to pay, which the pre-sentence report shows that she has if the government would be more focused on her and not on him on collection, and factor that in to the 3553A factors of which A7 is the need for restitution built into all the others to determine a sentence which would be properly balanced for her. And what the government proposes to do is to undo her sentence by doing this. And let me explain why. Because as we heard Mr. Zalzman admit, if Mr. Fumo is made 100% or jointly and severally liable, they will collect 100% from him as soon as they can. I don't know if it would be within the next minute, but it would certainly be within the next month. They will collect 100% for him and she will have zero to pay. But the judge Buckwalter in deciding how much imprisonment to give her, how much supervised release to give her, how much of a fine to give her, decided that she ought to pay about three quarters of a million dollars as part of her sentence package in relation to his sentence. Mr. Goldberg, how can that possibly not be error? When you have, she's no bargain, but compared to his conduct and what he did, he was the overwhelming dominant force in this criminal scheme. Added to that, your client, she is property, but he is a multimillionaire. She does not have the funds, near the funds that he has. So that balancing these, how could the district court not have joint and several or their liability having in mind, in addition, that victim is the most important person or one of the most important people to keep in mind in this sentencing regimen? Only if you allow the government's myopic focus on this small piece of one part of the sentencing when what Judge Buckwalter was doing was putting together a complicated sentencing. And that's, there's very little precedent in this court. But the precedent that there is, is a case called Hunter, which as it happens, Judge Cowen wrote in 94. And in which the court held, and I'm not making this part, in which the court held that the allocation of restitution between co-defense need not reflect the relative culpability if the judge exercises discretion in the sentencing picture. But it has to advise, it has to advise. It doesn't have to reflect it. But it has to advise. He did. He certainly was not unaware of that. He sat through a five-month trial. He knew very well what, how central Ruth Barnow's contribution was. Even applying the, what shall we call it, the Hunter Doctrine? I'll take credit. Even applying, you know, the rubric that you've mentioned from Hunter, it's clear that whether you think about it, you know, holistically as, you know, what was this crime all about and who was involved? Or whether you think about it, you know, statistically, 96%, you know, or 94%, whatever number that you've thrown around, that that's clearly not reflective of 50-50. I mean, if that were the only thing. When you look, when you, you know, you mentioned 35-53A, you know, I always focused on A6 back in the day. And, you know, in thinking about A6 and A7, I'd say, well, I want to think about the victim and I also want to think about are these defendants really similarly situated? If they're not, then how do I address that issue? And here, I get your argument. 50-50 is the absolute best that your client can get. The question is, you know, is that really reflective of, you know, a fair assessment of what went on and the two critical factors that we're to take into account, the economic, you know, ability to pay the restitution and the relative culpability or contribution to the criminal enterprise. In the big picture, it was. A detailed, thorough sentencing speech at the second appearance runs 46 pages of transcript. And this is a small part of it, but a key part, an essential part for the are now sentence that he imposed. He did not want her to be free of the obligation to pay and for the payment to be directed to the Citizens Alliance. And she would be freed of that obligation if the government were to prevail on our appeal without her having appealed or them having appealed that judgment. If it goes back, that can't be right. But that may be, but you still, as I understood, you made an interesting point because, in effect, what you're saying too is that she's really, if you do this, she's getting off easier than he intended. Yes. In a sense, but couldn't he have done it with, you know, maybe a lesser division, you know, 75-25 or something? Because when you pick it up, you just don't expect to see 50-50. Right. But as the court said in Hunter, in a complicated case, it calls for an imaginative restitution scheme, and the court has considerable discretion that this court will not disturb. But, Hunter, there was not the problem that the victim would not be reimbursed. But this record, the way it stands, I don't think you can refute that the way this stands now, the victim is never going to be reimbursed by the co-defendant paying $1,000 a month. Well, if you build $1,000 a month into it as the assumption, then I'm not going to disagree with you. But I don't accept that assumption. The government has substantial collection powers, and it's a 20-year lien of judgment even after supervised release ends that the government can collect. Can the government – the probation department requires $1,000 a month. Can they also issue levies for more? Yes. While that's pending? The government can. The probation can, but the government can. They have all the power that exists in the federal statutes to collect any federal debt. Because it has the force of a civil judgment in that sense. Yes, exactly. It does, literally, by law. Well, yeah, but the court has adopted probation's recommendation. So, you know, the government can't act in contravention of the court's order. I mean, if the court orders $1,000, then it's going to be $1,000. The government would have to petition to the court to do any of the things that you're suggesting. Well, that's between them and Ms. Arnau and my other clients, but I'm not sure that that's so. But maybe you'll speak a moment on our appeal that our argument is pretty clear, I think. I don't know why Mr. Dosser didn't understand it. It's about the mandate. You're not asked to read the briefs from the prior appeal and decide whether you would have deemed that issue waived by them. The issue is, are we going to assume that Judge Fuente's opinion in the prior decision did not say what it meant? And if it was unclear, if it didn't seem to say what the government wanted it to say, then it was for them to file a motion then to that panel at that time to clarify that mandate, for re-hearing, whatever they needed to do. But once that was done and over, it doesn't matter if it was right or wrong. Well, you're making a hypothetical argument about the mandate, but it completely evades the substantive restitution issue, which was part of the case that was before the court. It was not before the court because the government didn't put it before the court in the way in which any litigant on appeal is obligated to do, state that it's an issue and argue why they are right. Sure, there was 50 pages of briefing about the measurement of the loss, but only a footnote, only a footnote repeated several times, but a footnote repeated several times, not an argument heading, not a statement of issues. The government pointed out the relationship between the guideline loss calculation and the restitution amount in briefing. Never. They asserted that they wanted the restitution reversed also. They never explained the relationship, not once. They were conclusory, one-sentence footnotes of exactly the kind that this court has repeatedly held that the desire of a party, sorry, the subjective desire of an appealing party, an appellant, to have a matter decided by the court as reflected in a footnote in its brief does not entitle you to have an issue decided on appeal. How can we accept your reading of the mandate when we found reversible error with respect to the several loss calculations? How can we accept that? And the guidelines, and where there's an obvious undisputed connection between the calculations of loss and restitution. Because in that appeal, the government asserted in these one-sentence footnotes that they thought the restitution should fall also, and in response, in our brief, we said that doesn't put restitution before this court, it's not an issue for decision, and then when the decision came out, the opinion does not address the government's claim of error in restitution, and it states literally, the restitution is affirmed. And when my friend, Mr. Zossberg, quoted the mandate, he left off the key words. It didn't say remanded for further proceedings, it said remanded for further proceedings, not inconsistent with this opinion. And it is inconsistent with the opinion which says the restitution is affirmed to treat that restitution as an open question on reimbursement. I think we have case after case that says when you read a mandate, you have to read the opinion with it. Yes. And it's construed together. Exactly. Exactly. And the opinion said the restitution is affirmed and did not address the government's argument that it should be reversed. All right. Thank you, sir. Thanks so much. So you do have one minute afterwards. Your Honor, I have a number of points I'd like to quickly address. With regard to the mandate issue, the notion that the government did not appeal this, you can read the briefs on the record as well as I can, and that notion is simply breathtaking. Well, I'm curious. Mr. Goldberger says that, well, the court affirmed the restitution. Is that right? The court said we affirmed the order of restitution in a passage of the opinion that only dealt with an issue raised by Mr. Fumo in his cross-appeal that said prejudgment interest should not be imposed on restitution. This court disagreed with that. It rejected that argument. And at the end of that one section said, we therefore affirm the judgment of restitution in the order of prejudgment interest. Then it gets into all the loss air, and then at the end it says we vacate the sentence. So as I said before, at best you have an ambiguity. The important thing about the mandate, the thing that I fall back on, Your Honor is absolutely correct. You look at the judgment in connection with the opinion, but the fundamental rule that this court and the Supreme Court have said over and over is that you look at the letter and the spirit of the mandate. Now how can it be the spirit of this court's mandate to say that the district court erred in imposing $2.3 million of loss, the real loss is $4.2 million, and our mandate is Mr. Fumo, you get to keep that extra $1.9 million that you stole. How can that be a reasonable interpretation of the mandate? And if it is, if that is the law of the case, the Supreme Court has gone further and said the law of the case is not a binding jurisdictional rule. A subsequent appellate court can correct a miscarriage of justice. That is a miscarriage of justice. If Mr. Fumo took $1.9 million from the Senate of Pennsylvania, from the Independence Seaport Museum, from Citizens Alliance, and keeps it. And that's what they're arguing here. So step after step, it just doesn't work. It's creative, but it doesn't work. We repeatedly link restitution to loss. And this, by the way, Your Honor, is an issue that Judge Buckwalter, who we respect a great deal, agrees with us on. He explained at length at resentencing how he couldn't understand how the Third Circuit could issue a mandate like that. That found him wrong to the tune of $2 million about loss, and yet affirmed the lower restitution number. So that's our position on that. I'm running out of time, and I do want, if I may, to just address a couple of the other issues. The Hunter Doctrine was a valid doctrine at one point. It's not relevant here. It was under the Victim Witness Protection Act, as I know Judge Cowan recalls. And the Victim Witness Protection Act did not have a correlate provision telling the court how to apportion among joint wrongdoers. This notion now that we look at the economic circumstances of each defendant, the contribution to the loss, wasn't there. And that's why the Hunter Doctrine was essentially the district court uses its discretion and does the best it can. But the U.S. Congress had something to say about that, which is mandatory restitution, putting the interests of the victims first, and doing it in part through this order. As far as the contribution to the loss, I'm okay with what Mr. Goldberger says, that we can look at acts as well as money. Dollars are very important. When the split is 96 to 4, that's a pretty good sign of who's in charge. But if you want to look at the acts that took place and not just who got the money, that's overwhelming. There's no evidentiary basis for saying that there's 50-50 culpability here. Mr. Goldberger talks about the government's vast collection powers. You simply cannot get blood out of a rock. I have never, Mr. Goldberger has not addressed the facts of the pre-sentence report, which show very clearly that Ms. Arnao's personal worth is less than $100,000 back in 2009, before she went to jail, before she lost her job, before she took a new job paying $3,000 a month. Where there's money was the joint assets that she had with her husband. Yeah, they had boats and they had houses. And the government can't reach that, as your honors well know. We can't reach joint assets unless there's death or a divorce. So once again, we're telling Citizens Alliance, wait around for a couple decades and we'll see what we can do for you. This notion that we have collection powers and therefore we can get something out of nothing is wrong. There is no evidentiary support for the idea that she can pay this judgment. And finally, the most shocking thing here, I think, is the argument that we have from the defense, which is that we would be undoing the sentence. That this is an important part of Ms. Arnao's sentence. There are ways to punish Ms. Arnao. There's imprisonment and with respect to money, there's a fine. But what we're talking about here is restitution. And what we're talking about here is making the victim whole and giving it back. That's true, there are ways. But at this point, there was a total package. And we couldn't say to the court, well, since we're going to make Mr. Foma liable severally and jointly for all the restitution, you can increase the sentence on the other defendant in terms of length. But again, because it's uncollectible, there's no reason to touch the sentence of the other defendant. The important point is that you have to look at the interest of the victim. If you're going to say that we're going to put an uncollectible judgment on a defendant because it punishes her, because it's part of her punishment, let the person who took another $800,000 walk away with it and not give the victim back, I would submit that's an error of law. That's not just an abuse of discretion. That is violating the mandate of the Mandatory Victims Restitution Act. Thank you very much. Thank you. Mr. Goldberg. Let me just say, and I'm strictly limiting myself to the cross-field, which is the scope of the mandate question, that even in the Pepper case in the Supreme Court last year, where the court talked about the importance of discretion on a remand and reopening a sentence, even then, which the government quotes in their brief, they leave out, as we pointed out, and I will end with this, that they attach to that subject to the mandate rule and the law of the case. This court has often, often refused appellants the benefit of perfectly valid legal arguments, of errors that they mentioned, because they did not make it an issue in their appeal, in the way that this court has required for decades. A line in a brief, a footnote in a brief, does not put an issue before the court for decision, and when the appellant does that, especially an experienced, well, whether it's not an experienced and knowledgeable defendant, this court has done that to experienced and knowledgeable appellants, and ignorant, bad appellants, both. It's a very important rule that appeals be structured and organized, and the mandate reflects that. This matter was decided by the prior panel, should not be reconsidered now. Restitution, the principal amount of restitution, was not remanded by the prior decision. And if the government wanted that mandate revised, it was in the prior appeal that they should have done it. Let me just remind you, there was one point that we made in our brief, that the government has conceded that a remand is required. So I don't know what the court might be inclined to do, but at least a remand, at least to reopen the error in the calculation is required. Thank you very much. Thank you, counsel. This case was obviously extremely well briefed. We enjoyed the argument this morning. Have a good day.